SECOND INJURY FUND *v.* FRASER-OWENS, INC.

CA 85-101                                   702 S.W.2d 828

Court of Appeals of Arkansas
En Banc
Opinion delivered February 5, 1986

*Steve Clark*, Att'y Gen., by: *Rick D. Hogan*, Asst. Att'y Gen., for appellant.

*Davis, Cox & Wright*, by: *Constance G. Clark*, for appellee Fraser-Owens, Inc. and CNA Insurance Company.

*Donald E. Bishop*, for appellee Carvel H. Logan.

MELVIN MAYFIELD, Judge. The Second Injury Fund appeals a decision of the Workers' Compensation Commission holding it liable for a portion of the compensation due claimant who suffered a compensable back injury when he fell from scaffolding on August 2, 1982.

The administrative law judge held that, prior to the August 2nd injury, appellant had a permanent impairment of 5% to the body as a whole; that the August injury resulted in an additional impairment of 15%; and that a portion of the disability existing after that injury should be paid by the Second Injury Fund. The full Commission affirmed the law judge's findings, except for his calculation of the amount of compensation owed by the Fund. That matter was remanded for "redetermination or clarification" by the law judge.

On appeal to this court, the Fund first argues that it has no liability to the claimant because he did not have a loss-of-

earning-capacity impairment, pursuant to Ark. Stat. Ann. § 81-1313(i) (Supp. 1985), prior to his compensable injury on August 2, 1982. We agree.

■ The issue involved in this case has recently been considered by us in the cases of *Osage Oil Co.* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985); *Second Injury Fund* v. *Girtman*, 16 Ark. App. 155, 698 S.W.2d 514 (1985); and *Second Injury Fund* v. *Coleman*, 16 Ark. App. 188, 699 S.W.2d 401 (1985). In those cases, we agreed with the Fund's contention that the word "disability" in Ark. Stat. Ann. § 81-1313(i), *supra*, means loss of earning capacity due to a work-related injury, that "impairment" means loss of earning capacity due to a nonwork-related condition, that the word "handicapped" means a physical disability that limits the capacity to work, and we now add that the words "anatomical impairment" mean the anatomical loss as reflected by the common usage of medical impairment ratings. We think these definitions are necessary to accomplish the purpose of the second injury statute and to fix the liability of the parties in accordance with the mathematical formula set out in that statute.

At the time of the first hearing in this case, the claimant was 46 years old. After completing high school and one semester in Arkansas State Teachers College, he entered the military where he was a paratrooper and made 32 jumps. Claimant began work for the appellee-employer in May of 1982 as a heavy equipment operator and was then reclassified to "construction carpenter." At the time of his injury on August 2, 1982, he was working on a scaffold when his crowbar slipped off of a nail and he fell backwards off the scaffold. He landed in a semisitting position, more or less on his tailbone, and was taken to a hospital where he received immediate medical treatment.

Claimant testified that when he went to work for the appellee-employer he was not aware that he had any back problem. He did admit, however, that 10 years before he had applied for a job with the City of Wichita, Kansas, and had a preemployment physical in which X rays of his lower lumbar spine revealed evidence of a spondylolysis involving L5. Claimant testified that he was shocked because he had never had any back problems and thought the doctor must have looked at someone

else's X rays. He was, however, turned down for employment by the City of Wichita because of the report from the doctor as to his back condition. He returned to see this doctor in 1973 after being involved in a rear-end automobile accident. He was off work for three or four days at that time and said he had no back problems thereafter.

Subsequently, claimant went into business for himself, first as a commercial and residential paint and sandblast contractor, and then, in 1977, as a dirt contractor, installing septic systems, digging ponds, building driveways and private roads, and hauling dirt and gravel. Later, he worked as a welder on an offshore drilling rig. He passed the physical, and did all types of heavy lifting, climbing and hanging upside down. He testified it was the most demanding work in which he had ever been involved and that it gave him no problem with his back. After that, he did some part-time work for a sawmill operator, cutting and trimming logs, loading them on a truck, and unloading them at the sawmill. His next job was with the appellee-employer.

Claimant's family doctor in Wichita, Kansas, testified by deposition that claimant was born with his back condition and that people with this condition were more susceptible to back injuries than people without it. A doctor who treated claimant after his August 1982 injury testified that it would not be unusual for the claimant to be unaware of his back problem and to attribute any discomfort to everyday hard work. But the doctor said that as the claimant gets older, he would have more problems with his back.

The Commission's opinion states:

Claimant's preexisting spondylolysis unquestionably caused claimant to be rejected for employment in 1972. As this preexisting condition did, at least on one occasion, adversely affect claimant's earning capacity by causing him to be denied employment, we find it impossible to say that it was not a preexisting disability within the meaning of the law.

We fully recognize our duty to review the evidence in the light most favorable to the Commission's decision and to uphold that decision if it is supported by substantial evidence,

*Georgia Pacific Corp.* v. *Ray*, 273 Ark. 343, 619 S.W.2d 648 (1981); *Bemberg Iron Works* v. *Martin*, 12 Ark. App. 128, 671 S.W.2d 768 (1984). However, there is really no dispute as to the facts as set out above. The Commission's decision simply relies upon the claimant's rejection for employment in 1972. We do not think that is enough to constitute substantial evidence to support a finding that the claimant had a preexisting condition that was independently causing a loss-of-earning capacity prior to the second injury and continued to do so after that injury. The *Rogers, Girtman,* and *Coleman* cases, cited above, relied on previous decisions of this court and the Arkansas Supreme Court which make it clear that the solvency of the Second Injury Fund is important, that it is a limited and restricted fund, and that it is not liable unless the above stated preexisting condition exists. We think the following statement in appellant's brief may well be correct:

> There are very few, if any, Arkansas workers who are completely free of *any* degree of medical or anatomical impairment to every part of their body. Thus, to adopt Appellee's contention and the decision of the Commission would warrant SIF exposure in virtually every Workers' Compensation case, bankrupt the SIF, and not serve to encourage the employment of truly handicapped workers.

We hold there is no substantial evidence to support liability against the Second Injury Fund in this case. In all other respects, the Commission's decision is affirmed.