SECOND INJURY FUND *v.* Ethmer Lee YARBROUGH
and Frankie JONES

CA 85-216 721 S.W.2d 686

Court of Appeals of Arkansas
En Banc
Opinion delivered December 23, 1986

*E. Diane Graham*, for appellant.

*Marc I. Baretz*, for appellees.

MELVIN MAYFIELD, Judge. The Second Injury Fund appeals a decision of the Workers' Compensation Commission holding it liable to the claimant, Ethmer Lee Yarbrough, for permanent partial disability benefits of 25% to the body as a whole.

The claimant first received an injury to his back on June 28, 1978, while working for Halstead Industries. He was treated conservatively and released to return to work September 12, 1978, with no permanent disability rating. Although he continued to be bothered by "nagging" back pain, claimant worked for Halstead until he was terminated in 1981 for getting into a fight with his foreman. Within a week, he went to work for Frankie Jones. On September 10, 1982, while working for Jones, the claimant was helping lift a prefabricated rafter and felt his back pop, and he was immediately seized with severe back pain. Surgery was performed for ruptured discs at L4 and L5 on September 24, 1982. The claimant reinjured his back the following spring in a noncompensable accident at his home, and surgery was again performed for a ruptured disc at L5.

After a hearing held to determine the extent of claimant's disability and the liability, if any, of the Second Injury Fund, the administrative law judge held that the claimant had a 45% permanent disability to the body as a whole, that the Second Injury Fund was liable for 25% of that disability, and that Frankie Jones was liable for the other 15%. The full Commission affirmed the law judge.

On appeal to this court, the Fund argues that it should not have been held liable in any amount because the claimant did not have a disability that rendered him a handicapped worker prior to the injury sustained on September 10, 1982, while working for Frankie Jones, and that the Commission erred in holding that employer knowledge of a prior disability or impairment is not a prerequisite to applying the Second Injury Fund statute.

■■ We have now clarified the meaning of the words "disability, impairment, and handicapped" as used in the second injury statute, Ark. Stat. Ann. § 81-1313(i) (Supp. 1985). In *Osage Oil Co.* v. *Rogers*, 15 Ark. App. 319, 692 S.W.2d 786 (1985), *Second Injury Fund* v. *Girtman*, 16 Ark. App. 155, 698 S.W.2d 514 (1985), and *Second Injury Fund* v. *Coleman*, 16

Ark. App. 188, 699 S.W.2d 401 (1985), we held that the word "disability" means loss of earning capacity due to a work-related injury, that "impairment" means loss of earning capacity due to a nonwork-related condition, and that "handicapped" means a physical disability that limits the capacity to work; and in *Second Injury Fund* v. *Fraser-Owens*, 17 Ark. App. 58, 702 S.W.2d 828 (1986), we added that "anatomical impairment" means the anatomical loss as reflected by the common usage of medical impairment ratings. These cases make it clear that, before the Second Injury Fund is liable, one must have a preexisting condition that is independently causing a loss of earning capacity at the time of the second injury, and which continues to do so.

In this case, the law judge's opinion was filed on September 14, 1984, and the full Commission affirmed and adopted that opinion on February 25, 1985. *Osage Oil Co.* v. *Rogers, supra*, was not decided by us until July 3, 1985. Until that case, and the other cases that followed it, defined and clarified the meaning of the words *disability, impairment, handicapped* and *anatomical impairment*, the Commission's view and the view of this court as to the meaning of those words were not in complete agreement. Therefore, we think it necessary to remand this case for the Commission's reconsideration in light of the cases mentioned above.

We must, however, now address the meaning of a provision of the second injury statute not heretofore defined or construed by us. Ark. Stat. Ann. § 81-1313(i) (Supp. 1985) provides, in part:

> It is intended that latent conditions, which are not known to the employee or employer, not be considered previous disabilities or impairments which would give rise to a claim against the Second Injury Fund.

The Fund argues in this appeal that the purpose of second injury fund statutes in general is to eliminate the competitive employment disadvantage suffered by handicapped workers. *See Chicago Mill & Lumber Co.* v. *Greer*, 270 Ark. 672, 606 S.W.2d 72 (1980). But, the Fund asserts, the statutes were also an attempt to encourage employers to put and keep handicapped people in the work force. Our statute supplies an incentive in that respect by attempting to insure "that an employer employing a handicapped worker will not, in the event such worker suffers an

injury on the job, be held liable for a greater disability or impairment than actually occurred while the worker was in his employment." The Fund's brief in this case, therefore, states:

> How can a worker be at a competitive employment disadvantage if his or her employer is unaware of any such prior condition? Will the purposes of [the statute] be fulfilled by employers [or carriers] scurrying to find out if its worker had a prior disability only *after* he is injured on the job? If the employer is unaware of any condition before the injury giving rise to the claim, there is no employment disadvantage to be eliminated. Knowledge of such condition on the part of the employer is essential to existence of an employment disadvantage. Knowledge on the part of the employee is irrelevant.

When the language of a statute is clear and unambiguous, resort to statutory construction is inappropriate. *Patrick* v. *State*, 265 Ark. 334, 576 S.W.2d 191 (1979). When statutes are being construed, the legislative intent behind the wording used must be determined. *Amason* v. *City of El Dorado*, 281 Ark. 50, 661 S.W.2d 364 (1983). In *City of North Little Rock* v. *Montgomery*, 261 Ark. 16, 18, 546 S.W.2d 154 (1977), the Arkansas Supreme Court said:

> We have held that "[T]he meaning of a statute must be determined from the natural and obvious import of the language used by the legislature without resorting to subtle and forced construction for the purpose of limiting or extending the meaning. **** It is our duty to construe a legislative enactment just as it reads." *Black* v. *Cockrill*, Judge, 239 Ark. 367, 389 S.W.2d 881 (1965). We have also said "[I]n construing statutes in the absence of any indication of a different legislative intent, we give words their ordinary and usually accepted meaning in common language." *Phillips Petroleum* v. *Heath*, 254 Ark. 847, 497 S.W.2d 30 (1973).

However, in *Bird* v. *Pan Western Corp.*, 261 Ark. 56, 60, 546 S.W.2d 417 (1977), the court also said:

> The ordinary and generally accepted meaning of words used in a statute must yield to the meaning intended

by the General Assembly when it is clear from the context of the act that a different meaning is intended. . . . Thus, in construing an act, the courts are bound by specific definitions of a word by the legislature in that act, regardless of the usual and ordinary meaning of that word; unless the definition is arbitrary, creates obvious incongruities in the statute, defeats a major purpose of the legislation or is so discordant to common usage as to generate confusion. (Citations omitted.)

When construing an act, the legislative intent is to be acquired from a consideration of the statute which gives effect to every word if possible. *Holt* v. *Howard*, 206 Ark. 337, 175 S.W.2d 384 (1943). Any construction which would render meaningless one or more clauses of the act is to be avoided if possible. *Id.* While "and" and "or" can be convertible, it is well settled that such a substitution may not be made "unless the whole context of the statute requires, plainly and beyond question, that it be done in order to give effect to the intention of the Legislature." *Shinn* v. *Heath*, 259 Ark. 577, 535 S.W.2d 57 (1976); *see also Hines* v. *Mills*, 187 Ark. 465, 60 S.W.2d 181 (1933); and *Beasley* v. *Parnell*, 177 Ark. 912, 917, 9 S.W.2d 10 (1928). The reason is that, when words have a settled legal meaning, it is dangerous to conjecture that they were used in other than their legal signification. *Beasley*, 177 Ark. at 917-18. "In its ordinary sense the word 'or' is a disjunctive particle that marks an alternative generally corresponding to 'either' as 'either this or that'; it is a connective that marks an alternative." *Id.* at 918.

Apparently, New York is the only state that has required actual employer knowledge of the employee's previous condition in every case in the absence of clear and unequivocal wording in the statute to that effect. *See* 2 Larson, *Larson's Workmen's Compensation Law* § 59.33(b)(1986). New York has, by judicial interpretation, required that there be actual knowledge on the part of the employer. *Bass* v. *Westchester Concrete, Inc.*, 84 A.D.2d 634, 444 N.Y.S.2d 283 (1981); *McCoy* v. *Perlite Concrete Co.*, 53 A.D.2d 749, 384 N.Y.S.2d 234 (1976).

Larson criticizes the New York rule of requiring actual employer knowledge in each case stating:

The New York rule is defensible only if it is assumed

that the exclusive purpose of the second injury principle is to encourage the hiring of the handicapped. This is, of course, the central purpose — but the principle also embraces the idea of achieving this result in a way that works hardship on neither the employer nor the employee. If one did not care about incidental hardship to the employee, one could do the hire-the-handicapped job by merely using an apportionment statute. And if one cares about the element of hardship to the employer, one could argue the employer ought to be relieved of the cost of the preexisting condition, whether he knew of it or not, purely on the ground that the cost of this impairment, not having arisen out of this employment, should not in fairness fall upon this employer.

A more down-to-earth reason for disapproving the New York rule is that, as we have seen, it involves one of those distinctions that consume far more litigation time and cost than the policy at stake is worth.

2 Larson, *Larson's Workmen's Compensation Law* § 59.33(e) (1986).

 We have concluded that the language in Ark. Stat. Ann. § 81-1313(i) referring to latent conditions "which are not known to the employee or employer" requires knowledge by *either* the employee *or* the employer, but not both. We think this is what the statute says, and we are persuaded that this is what it means.

This construction of section 81-1313(i) was, of course, not known by the Commission at the time it rendered its decision in this case. So, we think it proper on remand for the Commission to also reconsider its decision in view of our decision on this point.

Remanded for reconsideration in keeping with this opinion.