The Honorable Art Givens State Representative 301 Brookwood Road Sherwood, Arkansas 72116
Dear Representative Givens:
This is in response to your request for an opinion clarifying and reconciling what you perceive to be a conflict between an opinion issued on January 28, 1970 by then Attorney General Joe Purcell, (copy enclosed), and Opinion No. 89-130, (copy also enclosed) recently issued by this administration.
The earlier opinion was issued in response to the question of whether goods produced by a factory in Arkansas and stored prior to shipment outside the state are subject to assessment for personal property tax. The opinion concludes that pursuant to what is now A.C.A. 26-26-1102, such property is not subject to ad valorem taxation if it is merely held for storage in this state prior to shipment out of state. The opinion, however, goes on to add that ". . . tangible personal property brought into this state to be reprocessed or to be the subject of a manufacturing process would be inventory and subject to taxation under [A.C.A.26-26-1201]."[1]
Opinion No. 89-130 was issued in response to several questions concerning the ad valorem assessment of certain property of a particular manufacturing concern located in the "freeport" area of Little Rock, Arkansas. The first question addressed in that opinion arose because the corporation , after hiring a new comptroller, discovered that the corporation had been assessing its finished goods at face value. The opinion concluded under A.C.A. 26-26-1102, that "if goods are manufactured and stored for shipment outside the state, they are not subject to ad valorem taxation." This opinion does not purport to address the question of whether the raw materials used to produce the manufactured product are subject to ad valorem taxation by the state.[2] Nor does it purport to address that statute's constitutionality. These are the questions now requiring answers. Arkansas Code Annotated 26-26-1102 is the relevant statute. It provides in pertinent part:
 (b)(1)(B) Tangible personal property in transit through this state and tangible personal property manufactured, processed, or refined in this state and stored for shipment outside the state shall, for purposes of ad valorem taxation, acquire no situs in this state and shall not be assessed for taxation in this state. [Emphasis added.]
"Tangible personal property in transit" is defined as that:
(A) Which is moving in interstate commerce through or over the territory of this state; or
(B) Which is consigned to or stored in or on a warehouse, dock, or wharf, public or private, within this state for storage in transit to a destination outside this state, whether the destination is specified when transportation begins or afterward, except where the consignment or storage is for purposes other than those incidental to transportation of the property; or
(C) Which is manufactured, processed, or refined within this state [AND] which is in transit and consigned to, or stored in or on, a warehouse, dock, or wharf, public or private, within this state for shipment to a destination outside this state. [Emphasis added.]
The question for resolution is whether, under this statute, raw materials which are brought into Arkansas from another state, to be used in producing a finished product which is to be stored and shipped out of state, are subject to assessment and ad valorem property taxation.
The first step in analyzing this question is to construe the words of the statute to see if the legislature intended that these raw materials be taxed. The statute exempts tangible personal property in transit through the state and tangible personal property manufactured, processed, or refined in the state and stored for shipment outside the state. The question arises as to whether this language could apply to raw materials, which arguably are "manufactured, processed, or refined" in the state, and stored for shipment outside the state. It is true that the raw materials are processed in this state, and stored for shipment outside the state, albeit in a new refined form. The language of the statute, however, appears to be addressing goods which have already been manufactured, processed, or refined. The issue is whether to construe these words as including property to be manufactured, as well as that which has already been manufactured.
It is my opinion that there is an ambiguity in the statute, the language being susceptible to more than one interpretation, and that the legislative history is of little help in resolving the ambiguity.[3] Ordinarily, when this is the case, a court will apply any relevant rules of statutory construction to resolve the issue. Second Injury Fund v. Yarbrough,19 Ark. App. 354, 721 S.W.2d 686 (Ark.App. 1986). In this case, two established maxims are of import. The first is the general rule that tax exemptions are strictly construed against the exemption, and if any doubt exists as to the exemption, it should be denied. Ragland v. General Tire and Rubber Co., 297 Ark. 394, 295 S.W.2d 223 (1989). The second is that if an administrative agency adheres to a certain interpretation of a statute under which it operates, that interpretation will be given some weight by the courts, Arkansas Contractors Licensing Bd. v. Butler Const. Co., Inc. of Barling, 295 Ark. 223, 748 S.W.2d 129 (1988), and will not be overturned unless clearly wrong if the practice has been long continued. See generally, Ragland v. Arkansas Writers' Project, Inc., 287 Ark. 155,697 S.W.2d 94 (1985), reh denied, 287 Ark. 155, 698 S.W.2d 802; and Morris v. Torch Club, 278 Ark. 285, 645 S.W.2d 938 (1983). It is my understanding that the Assessment Coordination Division,(the agency charged with administering A.C.A. 26-26-1102), has, since the time of the statute's enactment, construed the statute as permitting the assessment and taxation of raw materials brought into the state to be used in manufacturing goods to be shipped out of state. This fact would thus be given weight by the courts, and likely result in adherence to the agency's construction, unless clearly wrong.
Ordinarily, in the face of this ambiguity, the above precepts would form a sufficient basis for concluding that the statute authorizes the taxation of these raw materials. The question posed, however, is not subject to such a simple analysis. It is not simply a question of discovering how far the legislature intended to go in exempting property from taxation, and whether the Assessment Coordination's interpretation of the statute in clearly wrong. It is a question of constitutional proportions.
Constitutional issues arise in this dispute from two sides. The first side is our own Arkansas Constitution which specifically lists the property which is exempt from taxation. Arkansas Constitution Art. 16,5. That document also provides at Art. 16, 6, that " all laws exempting property from taxation other than as provided in this Constitution shall be void." The second side is comprised of the Due Process and Interstate Commerce Clauses of the United States Constitution. These provisions forbid the taxing, by a state, of property which is in transit through that state, and thus does not have a sufficient situs in the state for taxation purposes. See generally, Standard Oil Co. v. Peck, 342 U.S. 382
(1952), and Mikos v. Ringling Bros.-Barnum Bailey Combined Shows, Inc., 368 So.2d 884 (Fla.App. 1979), cert denied, 378 So.2d 348 (Fla. 1979), app. dis. 445 U.S. 939 (1980), reh. denied, 446 U.S. 947 (1980). Thus the legislature, if it is to enact a constitutional statute, must walk a fine line between these two requirements. It is only permissible, when the two constitutions are read together, to exempt property that is required to be exempt by either the Arkansas or United States Constitution. That is, all property which is not constitutionally exempt must be taxed. Thus, the legislature must discern the items which are constitutionally exempt, exempt them, and go no further.
With these facts in mind, the resolution of your question depends upon whether the raw materials are exempt under the Due Process and Interstate Commerce Clauses of the United States Constitution.[4] If not, they must be taxed in this state. This question depends upon whether the raw materials are traveling in interstate commerce, ("in transit"), or whether they have acquired a sufficient situs in the state to be constitutionally subjected to taxation.
Precise case law on point is sparse. There is, however, some older United States Supreme Court case law which is helpful. In Minnesota v. Blasius,290 U.S. 7, the Court set out the general contours of the law on this topic: Similarly, the States may not tax property in transit in interstate commerce. But, by reason of a break in the transit the property may come to rest within a State and become subject to the power of the State to impose a non-discriminatory property tax. . . . The `crucial question' in determining whether the State's taxing power may thus be exerted, is that of `continuity of transit.' [Citation omitted.]
If the interstate movement has not begun, the mere fact that such a movement is contemplated does not withdraw the property from the State's power to tax it. [Citations omitted.] If the interstate movement has begun, it may be regarded as continuing, so as to maintain the immunity of the property from State taxation, despite temporary interruptions due to the necessities of the journey or for the purpose of safety and convenience in the course of the movement. [Citation omitted.].
. . . Where property has come to rest within a State, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the State, or for shipment elsewhere, as his interest dictates, it is deemed to be a part of the general mass of property within the State and is thus subject to its taxing power.
290 U.S. at p. 9, 10.
It is my opinion, in light of this language, that these raw materials have ceased to move in interstate commerce at the time of their use in the manufacturing process, and thus must be taxed in this state. It is also my opinion that the Assessment Coordination Division's interpretation of A.C.A 26-26-1102 to this effect is not clearly wrong, and would be upheld in the courts. Additionally, it is my opinion that the statute properly and constitutionally delineates the fine line between what must be taxed and what must be exempted.[5] The statute exempts finished manufactured goods stored for shipment outside the state, and raw materials which are not subjected to processing but merely shipped in, and stored for shipment outside the state. Both of these categories of goods are "in transit" traveling in interstate commerce. (But see note 5, supra.) Conversely, it subjects to taxation raw materials brought into the state to be used in the manufacture of goods.[6] This state is the destination of these raw materials. They have ceased to travel in interstate commerce when they have reached their destination. Support for this conclusion can be found in federal and state interpretations of the relevant constitutional provisions. As stated in 84 C.J.S. 120:
While a mere temporary detention of property in transit, as where it is awaiting facilities for transportation or the removal of obstructions to transportation, does not give it a situs for taxation at the place of detention, property may have a situs for taxation in the state notwithstanding it is being held awaiting shipment to a point outside the state at some future indefinite time, and it may be taxable where it is stored or held for an indefinite time, to await the owner's pleasure, a rise in the market, sale, distribution, or delivery, in the state, or to await or to undergo a process of manufacture, or otherwise to be prepared for sale or disposal. [Footnotes omitted and emphasis added.]
84 C.J.S. 120 at p. 244.
Support for this conclusion may also be found by analogy to analysis under the Import-Export Clause. See Youngstown, supra, note 6. There the U.S. Supreme Court noted that:
The stipulation in the Youngstown case shows that the imported ores were essential to the operation of Youngstown's Ohio plant; that Youngstown had imported them `for use in manufacturing' and `to meet its estimated [manufacturing] requirements' at that plant; that the ores had arrived at their destination, had been placed in `piles' in the `ore yards' of that plant, and their importation journey definitely had ended; that the ores were irrevocably committed to `use in manufacturing' at that plant and point of final destination . . . . Does not the stipulation thus show that the ores were not only needed, imported, and irrevocably committed to supply, but were actually being used to supply the daily requirements of the plant? It seems to us that these stipulated facts inescapably establish that Youngstown had `so acted upon the [imported ores]' (Brown v. Maryland, supra (U.S. 12 Wheat at 441)), by using them `for the purpose for which they [were] imported,' that they must be held `to have there entered the manufacturing process' (Hoover A. Co. v. Evatt, supra (324 U.S. at 665, 667)) and to have lost their distinctive character as `imports' and all tax immunity as such.
358 U.S. at 545, 546.
It was also held in Eoff v. Kennefick-Hammond Co., 80 Ark. 138, 96 S.W. 986
(1906), that property brought into the state for use may be taxed. This interpretation lends credence to the conclusion that raw materials, imported for "use" are taxable in this state. See also Opinion of the Mississippi Attorney General issued on February 28, 1986, (copy enclosed).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
STEVE CLARK Attorney General
SC:arb
[1] This statute provides: "All property in this state shall be assessed by the authorized authorities according to its value on January 1. However, stocks of merchants and manufacturers shall be assessed at the value of the average stock in possession or under control during the year immediately preceding January 1 of the year in which assessment is required."
[2] In fact, footnote 2 of Opinion No. 89-130 notes that manufacturers must comply with A.C.A. 26-26-1205, a statute which requires manufacturers to assess raw materials. That statute, however, does not expressly cover goods in transit.
[3] The emergency clause of Act 269 of 1969 [A.C.A. 26-26-1102] provides only that "prospective manufacturing and processing industries and commercial warehouses are confused as to ad valorem taxation of personal property in transit through Arkansas, and that because of this confusion the decision to locate industries therein may be adversely influenced to the extent the state may lose valuable new industries."
[4] They are not specifically exempted under Arkansas Constitution Art.16, 5.
[5] Statutes enacted by the legislature enjoy a presumption of constitutionality, and all doubts will be resolved in favor of the statute's validity. Potts v. McCastlain, Commissioner, 240 Ark. 654,401 S.W.2d 220 (1966), cert denied 385 U.S. 946 (1967). One portion of A.C.A. 26-26-1102, however, deserves special mention with regard to its constitutionality. The statute exempts manufactured finished goods stored for shipment outside the state. It should be noted that these goods may only be constitutionally exempt if they have "begun" their journey in interstate commerce. This will be a factual question which may vary with individual circumstances. It is my opinion, however, that this fact alone is not sufficient to override the presumption of constitutionality discussed above.
[6] If, however, these raw materials are imported from another country, Art. 1, 10 cl. 2 of the United States Constitution, (the Import — Export Clause), and relevant case law construing it will govern. See, Youngstown Sheet Tube Co. v. Bowers, 358 U.S. 534 (1959). This clause also governs other goods in international commerce.