## WELCH'S LAUNDRY AND CLEANERS *v.* Vera A. CLARK

CA 91-333                                      832 S.W.2d 283

Court of Appeals of Arkansas
Division II
Opinion delivered June 3, 1992

224

*Bridges, Young, Matthews, Homes & Drake*, by: *Michael J. Dennis*, for appellant.

*Baim, Gunti, Mouser, DeSimone, & Robinson*, by: *William Kirby Mouser*, for appellee.

MELVIN MAYFIELD, Judge. Welch's Laundry and Cleaners has appealed a decision of the Workers' Compensation Commission which awarded Vera A. Clark benefits for injuries suffered in a fight with a co-worker. The Commission held that because the altercation occurred during business hours, on the employer's premises, and as the result of a quarrel having its origin in the employment, the injuries were compensable. Appellant argues on appeal that the Commission erred in finding that there was a causal relationship between the employment and the altercation and in not finding that the claimant was barred from receiving benefits as the aggressor.

The compensability of an injury suffered in an on-the-job assault was explained in *San Antonio Shoes* v. *Beaty*, 28 Ark. App. 201, 771 S.W.2d 802 (1989).

> The general rule applicable here has been restated several times. Injuries resulting from an assault are compensable where the assault is causally related to the employment, but such injuries are not compensable where the assault arises out of purely personal reasons.

> In *Westark Specialties et al.* v. *Lindsey*, 259 Ark. 351, 353, 532 S.W.2d 757, 759 (1976), the supreme court

quoted Larson with approval:

> Assaults arise out of the employment either if the risk of assault is increased by the nature or setting of the work, *or if the reason for the assault was a quarrel having its origin in [the] work.* (Emphasis in *Lindsey.*)
>
> The court also said that a "causal connection with the employment may be shown by connecting with the employment the subject matter of the dispute leading to the assault." 259 Ark. at 353, 532 S.W.2d at 759.

28 Ark. App. at 203-04. (Citations omitted.)

■ When reviewing a decision of the Workers' Compensation Commission, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark* v. *Peabody Testing Service*, 265 Ark. 489, 579 S.W.2d 360 (1979). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Company* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983).

Vera A. Clark was employed by Welch's Laundry & Cleaners on April 5, 1990, when she suffered injuries in a fight with a co-worker. There was evidence that Vera Clark and Joanna Sullivan had been friends for many years. Mrs. Clark testified that on April 4 she went home for lunch, became ill, and did not return to work. Mrs. Clark's husband called the employer and reported her illness. According to her testimony, when she returned to work the next day Mrs. Sullivan told her, "All hell broke loose yesterday when you didn't return back to work after lunch." When Mrs. Clark asked why this happened, Mrs. Sullivan started cursing her, and an argument broke out. Mrs. Clark said Mrs. Sullivan kept "picking" at her all morning and after lunch Mrs. Sullivan walked past her, pointed her finger at her, and said "in a very angry tone of voice," that they needed to talk after work. Mrs. Clark said she told Mrs. Sullivan to "go to hell," and Mrs. Sullivan hit her "up side the head." The women were separated by other employees and the manager sent them

both home for the day, but they resumed fighting in the parking lot. Both women were subsequently fired.

The women and their husbands testified that the women had also fought eight years previously in a bar, but the women insisted that they had "patched up" their differences and remained friends. They said they socialized together and had been in no other arguments since the dispute eight years before. In fact, Mrs. Sullivan had been instrumental in getting Mrs. Clark the job at the cleaners.

Jeff Welch, assistant manager at the cleaners, testified that on April 4 when Mrs. Clark did not return to work Mrs. Sullivan told him she had called Mrs. Clark's home and got no answer, even though Mrs. Clark was supposed to be home sick. Welch said Mrs. Sullivan had no authority to check on Mrs. Clark for the business. He also admitted that, after much prodding from Mrs. Sullivan, he had told Mrs. Sullivan that Mrs. Clark's husband had told him that Mrs. Clark had "kicked her [Sullivan's] rear end before and looked like she was going to have to do it again." Welch said the next day, when the women fought, he ran in when he heard Mrs. Clark calling him and saw the women lying in the floor.

Joanna Sullivan testified that on April 4 after lunch she called Mrs. Clark because she was concerned about her health but did not get an answer. She said she told "some of the girls" and Mr. Welch about Mrs. Clark not being at home. She admitted she was upset because, "I was the only one left there expected to do all the work." She denied, however, that she was trying to get Mrs. Clark into trouble. Mrs. Sullivan admitted that the next day she and Mrs. Clark got into an argument over Mrs. Sullivan telling co-workers that Mrs. Clark was not at home the afternoon before when she was supposed to have been sick, but she said she did not curse Mrs. Clark until after lunch when Mrs. Clark started cursing her and calling her a liar. She said she told Mrs. Clark, "Ann, we need to talk after work," to which Mrs. Clark replied, "You go straight to hell, bitch," and shoved her.

John Seymore, a college student who worked afternoons in the laundry, testified that he was standing beside Mrs. Clark when the fight broke out. According to him, Mrs. Sullivan walked by, pointed at Mrs. Clark and said, "I need to talk to you. I want to

talk to you after work," to which Mrs. Clark replied something like, "Go to hell"; then "they both kind of jumped at each other and they started fighting, and they fell into the clothes and they hit a table and then they fell on the floor." He said Jeff Welch came running and "he grabbed one of them and I grabbed the other one and pulled them apart. And that was about it. Jeff told them to go home." When asked which one actually started the fight he replied, "I don't think either one of them really started it. I mean, it was kind of both of them."

The Commission held:

> The greater weight of the evidence indicates that the dispute was over Sullivan's displeasure and subsequent actions concerning claimant's absence from work the afternoon of April 4, 1990. The evidence simply will not support a finding that the altercation had anything to do with their past difficulties.

Appellant argues that the Commission erred in finding that the preponderance of the evidence supported a causal relationship between the employment and the altercation. Appellant cites *Townsend Paneling* v. *Butler*, 247 Ark. 818, 448 S.W.2d 347 (1969), in which it was held that "injuries are not compensable where the assault arises out of purely personal reasons." Appellant maintains that this fracas was the culmination of a long-standing personal animosity between Mrs. Clark and Mrs. Sullivan involving a relationship that was personal, complex, and stormy. Appellant argues that the "barroom fight" apparently remained vivid in the memories of the claimant and her husband; and to the Clarks, "the fight remained the moment of victory to be remembered and potentially relived." Appellant says that these strong feelings had nothing to do with either the claimant's or Mrs. Sullivan's employment at the laundry, and "the spark which ignited the volatile relationship" was not the employment but the claimant's personal words of insult, "bitch" and "go to hell" following closely on warnings of past "whippings" and the prediction of future ones.

We think the testimony will support a finding that Mrs. Sullivan became angry when Mrs. Clark did not return to work after lunch on April 4 because Mr. Welch had already given one worker the afternoon off due to lack of work; that when Mrs.

Clark did not return from lunch that left Mrs. Sullivan to do all the work by herself; and then she called Mrs. Clark's home, allegedly to check on her well-being, and reported to all who would listen that Mrs. Clark was not at home. The next day words were exchanged about Mrs. Clark's absence, cursing started, and the dispute escalated into a physical altercation. However, the dispute, the Commission found, did involve the work.

■ Appellant's second argument is that the Commission erred in finding that Ark. Code Ann. § 11-9-401(a)(2) (1987) did not bar the benefits. That statute provides:

> However, there shall be no liability for compensation under this chapter where the injury or death from injury was substantially occasioned by intoxication of the injured employee or by willful intention of the injured employee to bring about the injury or death of himself or another.

Appellant contends that Mrs. Clark was the aggressor, or at least a co-aggressor, and thus should not be entitled to benefits. The Commission did not find this to be the case and awarded benefits. We think there is substantial evidence to support that decision.

Affirmed.

CRACRAFT, C.J., and DANIELSON, J., agree.