Linda Louise BRANTLEY *v.* TYSON FOODS, INC.

CA 94-37                               887 S.W.2d 543

Court of Appeals of Arkansas
Division II
Opinion delivered December 7, 1994
[Rehearing denied January 11, 1995.]

*Trafford Law Firm*, by: *G. Ray Howard*, for appellant.

*Bassett Law Firm*, by: *Earl Buddy Chadick*, for appellee.

MELVIN MAYFIELD, Judge. Linda Louise Brantley has appealed a decision of the Workers' Compensation Commission denying her benefits for an allegedly work-related injury.

At the hearing before the administrative law judge appellant testified that she went to work for Tyson Foods at its new plant in Pine Bluff in March, 1991. This was the first factory job she had ever held. Tyson provided orientation training for about two weeks then started production. Appellant was assigned to the skinning line where a "blow stick" blew the skin of the chicken away from the meat, then the person who skinned the chicken would turn the chicken around and pull the skin off all in one piece. One chicken was processed every five to six seconds.

Appellant testified she began having swelling in her hands

and pain in her arms and back in early April. She went to the plant nurse who dipped her hands in hot wax and gave her aspirin. Appellant said on Saturday, April 13, 1991, she awoke at around 4:30 a.m. with her left hand and arm swollen, "I would say it appeared to be double in size." She went to the plant, arriving around 5 a.m., because there was supposed to be a nurse on duty on every shift, but no nurse was there. Marilyn Seymore was called but did not get there until around 9 a.m. and by that time most of the swelling was gone. According to appellant, Ms. Seymore gave her an ice pack and some Epsom salt and told her to report in on Monday morning to start on a therapy program. Appellant said she asked Ms. Seymore to send her to a doctor but Ms. Seymore refused.

On Monday morning appellant went to the nurse's office where again her hands were dipped in wax and she was sent back to work skinning chickens. Appellant said nothing more was mentioned about starting her on a therapy program, and during that week she asked four times to be referred to a doctor but was refused. Finally, on April 19, appellant made an appointment with Dr. Kenneth A. Martin, a knee and sports medicine specialist, and stopped working because of the pain.

Dr. Martin examined appellant on May 1, 1991, diagnosed possible carpal tunnel syndrome, ordered a nerve conduction study, and started appellant on an anti-inflammatory drug. The nerve conduction study was normal so Dr. Martin referred appellant to Dr. Jacquelyn Sue Frigon, a neurologist. Dr. Frigon ordered an MRI, which was normal. In her notes dated August 27, 1991, she stated:

> [Appellant] is rather upset with me because I cannot state that this is all related to Workman's Comp injury. I have explained to her that it is really not in her best interests to say it is because I am looking at a collagen vascular type abnormality and I can say it occurred while she was working at Shoney's but cannot completely relate it to this.

At the same time Dr. Frigon noted that she had obtained an appointment for appellant in the Medicine Department at the University of Arkansas Medical Center.

On December 6, 1991, Dr. Eleanor A. Lipsmeyer, a rheuma-

tologist at the medical center, wrote a letter to Dr. Marsha Hixson, an orthopaedist at the medical center, stating that all laboratory work and x-rays of appellant's hands were normal and Dr. Lipsmeyer stated it was her opinion that appellant has "straight-back syndrome and muscle pain in her back secondary to that." Dr. Hixson then wrote a letter to appellant's attorney on January 8, 1992, in which she stated:

> I am sorry that I am really not familiar with the diagnosis of straight-back syndrome. I think that the muscle pain that Ms. Brantley is having may be consistent with other muscle strains that I have seen following repetitive work situations. Since Ms. Brantley states that she did not have any problems before she began working at Tyson, it appears reasonable that this problem could be related to her work there. Ms. Brantley's examination in my clinic was entirely subjective, and I have no objective and measurable physical findings. Without any measurable physical findings, I cannot assign any impairment rating.

Sharon Lybrand, who was Tyson's nurse in April, 1991, testified that appellant came to her complaining of soreness in her wrists. She noted no swelling, although an emergency medical technician who also worked there told her she had seen some swelling in appellant's wrists on April 16. According to Ms. Lybrand, Tyson had expected problems with the newly hired employees at the new plant and Dr. Tanner, the plant doctor, had devised a protocol for treating the complaints. He formulated a two-week therapy program of hot wax treatments for pain, cold soaks to reduce swelling, wrist wraps to prevent injury, and Advil. These treatments were offered to appellant and she was transferred to light duty. Ms. Lybrand said appellant originally agreed to go through the therapy program but never began the therapy.

Marilyn Seymore, Tyson's safety director and workers' compensation coordinator, also testified that Dr. Tanner had devised the therapy program for wrist pain and swelling, and said that if an employee had gone through the therapy without good success, the employee was sent to a physician. Ms. Seymore stated that appellant had agreed to start treatments and conditioning but never showed up.

The administrative law judge held that the appellant had

sustained a compensable injury and was temporarily totally disabled from April 22, 1991, through December 6, 1991. The Workers' Compensation Commission reversed. It held:

> The only evidence that claimant suffered a work-related injury is claimant's self-serving complaints of pain and swelling. None of claimant's treating physicians have corroborated claimant's complaints of the swelling. Additionally, no one is able to corroborate claimant's complaints of pain. In light of the fact that the nerve conduction study, the MRI, x-rays, blood tests and other sophisticated medical tests did not establish a physical source for claimant's complaints of pain and swelling, we find that the preponderance of the credible evidence does not indicate claimant sustained a work-related injury.

▮▮ The appellant argues on appeal that the evidence was not sufficient to support the Commission's finding. She complains that the Commission has added the requirement that there be objective and measurable physical findings to substantiate compensability. In *Arkansas Department of Health* v. *Williams*, 43 Ark. App. 169, 863 S.W.2d 583 (1993), we cited a previous case for its holding that Ark. Code Ann. § 11-9-704(c)(1) (Supp. 1991) provides objective and measurable findings are necessary to support a determination of physical impairment, but "they are not necessary to support a determination of wage loss disability." 43 Ark. App. at 178, 863 S.W.2d at 588. However, because the Commission's opinion appears to refer to the lack of objective and measurable findings in the attempt to explain its factual decision rather than as a legal requirement, we will not reverse or remand this case. For the same reason, we will not reverse or remand this case because of the Commission's reference to the claimant's "self-serving complaints of pain and swelling." It is obvious that her testimony is self-serving, but it is not, for that reason only, insufficient to support a finding in her favor.

▮ When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark* v. *Peabody Testing Service*, 265 Ark 489, 579 S.W.2d 360 (1979). The weight and cred-

ibility of the evidence is exclusively within the province of the Commission. *Morrow* v. *Mulberry Lumber*, 5 Ark. App. 260, 635 S.W.2d 283 (1982). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Company* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). In cases where a claim is denied on the basis that a claimant failed to show entitlement to compensation by a preponderance of the evidence, the substantial evidence standard of review requires that we affirm if a substantial basis for the denial of relief is displayed by the Commission's opinion. *Linthicum* v. *Mar-Bax Shirt Co.*, 23 Ark. App. 26, 741 S.W.2d 275 (1987). The resolution of conflicting medical testimony is a question of fact to be determined by the Commission. *Jones* v. *Scheduled Skyways, Inc.*, 1 Ark. App. 44, 612 S.W.2d 333 (1981).

■ In this case, all the medical tests performed on appellant were normal and no doctor diagnosed appellant with any treatable condition. Therefore, we must affirm the Commission's denial of benefits.

■ Appellant also argues that there is no substantial evidence to support the Commission's finding that she received unauthorized medical care because there was evidence she was never given a Form A-29 and that meant she could see any doctor she wanted to. Since the Commission found that appellant failed to prove she had sustained a compensable injury, and we are affirming that finding, the employer was not required to furnish appellant medical treatment.

Affirmed.

ROBBINS and COOPER, JJ., agree.