Harold Lee FOXX *v.* AMERICAN TRANSPORTATION

CA 95-218                                                924 S.W.2d 814

Court of Appeals of Arkansas
En Banc
Substituted Opinion Upon Grant of Petition for Rehearing
delivered June 19, 1996[1]

---

[1] *Reporter's note:* The original opinion in this case (Robbins, J.), which affirmed the decision of the Arkansas Workers' Compensation Commission, was delivered on February 7, 1996, and was not designated for publication.

*The Whetstone Law Firm, P.A.*, by: *Gary Davis*, for appellant.

*Matthews, Sanders & Sayes*, by: *Margaret M. Newton* and *Gail O. Matthews*, for appellee.

JOHN B. ROBBINS, Judge. Appellant Harold Lee Foxx sustained a compensable back injury while working for appellee American Transportation in April 1993. American Transportation paid certain benefits, but controverted Mr. Foxx's claim that he had suffered a 5% permanent impairment as a result of his injury. Mr. Foxx filed a claim with the Workers' Compensation Commission, and the Commission ruled that Mr. Foxx failed to prove the alleged 5% impairment. Mr. Foxx now appeals, arguing that the Commission's decision is not supported by substantial evidence. In addition, Mr. Foxx contends that the Commission erred as a matter of law when it relied upon wage-loss disability factors in denying his permanent anatomical impairment rating.

When reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if supported by substantial evidence. *Welch's Laundry & Cleaners v. Clark*, 38 Ark. App. 223, 832 S.W.2d 283 (1992). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *City of Fort Smith v. Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992). A decision by the Workers' Compensation Commission should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Silvicraft, Inc. v. Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983).

The evidence in this case shows that Mr. Foxx sustained a knee injury while working for American Transportation on March 15, 1993. Mr. Foxx returned to work and, on April 23, 1993, injured his lower back. When asked how this injury occurred, Mr. Foxx replied, "[p]ossibly bending and stooping, favoring my left knee, the doctors say I pulled the muscles in the left side of my back." He subsequently received medical treatment from Drs. Gil Johnson, Earl Peeples, and Robert McCarron.

Dr. Johnson treated Mr. Foxx four days after his back injury, and indicated that straight leg tests and x-rays were negative. Dr. Johnson diagnosed a lumbar strain, and Mr. Foxx was then attended by Dr. Peeples. Dr. Peeples saw Mr. Foxx in May 1993 and found no definite abnormality. He ultimately determined that Mr. Foxx's healing period ended on June 7, 1993, and rendered the following opinion:

> I do not anticipate the patient would have any permanent impairment of function related to his injury. I do not anticipate any further medical expenses related to his problem.

Dr. McCarron treated Mr. Foxx next, and noted that Mr. Foxx essentially had a normal examination. However, due to urinary symptoms and scrotal pain, Dr. McCarron ordered an MRI which was performed in late June or early July 1993. The MRI revealed a herniated disc at L4-5, and on September 24, 1993, Dr. McCarron estimated a 5% impairment to his body as a whole. It is on this opinion that Mr. Foxx primarily relies.

In addition to the medical evidence, the Commission considered evidence prepared by private investigator Kenneth Jones. Mr.

Jones investigated Mr. Foxx from July 17, 1993, until July 30, 1993. During this time, Mr. Jones prepared a video tape and observed Mr. Foxx operating a mowing service. According to Mr. Jones, he saw Mr. Foxx lift heavy objects, bend down, and run without exhibiting any symptoms of pain or disability. Mr. Foxx was also seen moving a very heavy mower from one location to another. There was further evidence that, during this time, Mr. Foxx was operating a cleaning service which entailed cleaning offices.

■■ In finding that Mr. Foxx failed to prove a 5% permanent anatomical or functional impairment, the Commission weighed the medical evidence along with other evidence of Mr. Foxx's physical capabilities. Although Dr. McCarron assigned a 5% impairment rating, Dr. Johnson failed to assign a rating and Dr. Peeples opined that Mr. Foxx's healing period had ended and that he suffered no permanent functional impairment. The resolution of conflicting medical evidence is a question of fact to be determined by the Commission. *Brantley* v. *Tyson Foods, Inc.*, 48 Ark. App. 27, 888 S.W.2d 543 (1994). In addition to the conflicting medical evidence, the Commission relied on the fact that Mr. Foxx was capable of engaging in relatively heavy labor activities. However, as Mr. Foxx points out, the issue presented to the Commission was whether Mr. Foxx had suffered an anatomical impairment, not whether he had suffered a wage-loss disability. We held in *Second Injury Fund* v. *Fraser-Owens*, 17 Ark. App. 58, 702 S.W.2d 828 (1986), that " 'anatomical impairment' means the anatomical loss as reflected by the common usage of medical impairment ratings." *See Second Injury Fund* v. *Yarbrough*, 19 Ark. App. 354, 721 S.W.2d 686 (1986). The bases for these medical impairment ratings are found generally in *Guides to the Evaluation of Permanent Impairment* (3d ed. 1988) published by the American Medical Association. In the introduction to chapter one of this publication, the following definition is found:

> The accurate and proper use of medical information to assess impairment depends on the recognition that, whereas impairment is a medical matter, disability arises out of the interaction between impairment and external demands, especially those of an individual's occupation. As used in the *Guides*, "impairment" means an alteration of an individual's health status that is *assessed by medical means*, "disability," *which is assessed by nonmedical means*, is an alteration of an

individual's capacity to meet personal, social, or occupational demands or statutory or regulatory requirements. (Emphasis in original.)

Clearly, the Commission considered Mr. Foxx's capacity to perform strenuous occupational demands in deciding whether he suffered an anatomical impairment. Its opinion included the following:

Despite all claimant's continued complaints of pain and unknown to his healthcare providers, claimant was working for respondent and ran a cleaning business and lawn care business. Claimant did the cleaning and the yard work himself. He had apparently began these operations while he was off work for the carpal tunnel syndrome. He continued to work after the knee and back difficulties. In fact, claimant's tax return[s] indicate that his cleaning service grossed over $30,000 in 1993.

The evidence shows that claimant was working on lawns with a lawn mower that weighs between 200 and 300 pounds. A videotape illustrates that claimant was quite mobile. He was able to move the lawn mower in and out of a trailer without significant difficulties. There were many other activities on the videotape which indicate that claimant was able to run, jump and actively work.

The preponderance of the evidence does not establish that claimant is entitled to any benefits, even the contingent 5% disability benefits. The Administrative Law Judge apparently relied primarily upon medical reports. However, the videotape indicates that claimant was able to participate in gainful employment at 100% capacity.

Claimant was able to lift mowers and perform many other activities. Therefore, claimant has failed to prove by a preponderance of the credible evidence that he has any impairment. Therefore, we find that respondent should not be liable for a 5% disability rating. When the medical reports, specifically Dr. McCarron's assessment, is weighed against the preponderance of the credible evidence, it is clear that claimant has not sustained a 5% disability rating.

While these evidentiary findings would be highly relevant and

appropriate in determining wage-loss disability, wage-loss disability was not an issue. However, the Commission held that, because Mr. Foxx "was able to participate in gainful employment at 100%," he was not entitled to *any* benefits.

■ We agree with Mr. Foxx that the Commission has blurred the distinction between anatomical impairment and wage-loss. The landmark case of *Glass* v. *Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961), involved a decision of the Commission which held that evidence other than clinical findings could not be considered to arrive at a rating for permanent partial disability. The supreme court reversed and remanded because disability in excess of anatomical impairment was sought. *See also Ray* v. *Shelmutt Nursing Home*, 246 Ark. 575, 439 S.W.2d 41 (1969). Here, disability (wage-loss) in excess of anatomical impairment has never been sought by Mr. Foxx.

■ While we do not hold that nonmedical proof is wholly irrelevant to the issue of anatomical impairment, the Commission may not arbitrarily disregard a physician's opinion (*Wade* v. *Mr. C. Cavenaugh's*, 25 Ark. App. 237, 756 S.W.2d 923 (1988)), especially when based on objective and measurable findings. Though the opinions of the medical experts conflicted, Dr. McCarron had the benefit of an item of objective medical proof that Dr. Johnson and Dr. Peeples did not. Dr. McCarron reported that an MRI was performed which revealed a herniated disc. The Commission may not have believed Dr. McCarron, or it may have believed that the herniated disc was not caused by the compensable injury, but, if so, it should have said as much.

We remand this proceeding to the Commission for it to make some finding regarding Dr. McCarron's report and the MRI which reflected a herniated disc.

Reversed and remanded.

JENNINGS, C.J., MAYFIELD, and NEAL, JJ., agree.

PITTMAN and ROGERS, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. Today this court takes a stroll down the primrose path, lured by a disingenuous argument. By this decision, the majority holds that the Workers' Compensation Commission cannot consider evidence demonstrating the absence of functional incapacity in determining whether or

not a claimant has suffered any degree of permanent disability. In other words, it is being held that the issue of permanent functional or anatomical impairment is a question to be determined purely by expert medical testimony. The majority so holds based only on the dubious authority of two second injury fund cases that touch upon the concept of impairment as it relates to the fund's liability, as well as on an equally dubious reference to an introduction contained in the American Medical Association's *Guides to the Evaluation of Permanent Impairment.* I submit that this decision is unprecedented and contrary to our established law that it is the function of the Commission to weigh all of the evidence, resolve conflicts, and determine the credibility of the witnesses. Therefore, I dissent.

Permanent impairment, which is usually a medical condition, is any permanent functional or anatomical loss remaining after the healing period has been reached. *Johnson* v. *General Dynamics*, 46 Ark. App. 188, 878 S.W.2d 411 (1994). An injured employee is entitled to the payment of compensation for the permanent functional or anatomical loss of use of the body as a whole whether his earning capacity is diminished or not. *Id.*

In this case, only one of appellee's three physicians was of the opinion that appellant had suffered a permanent impairment stemming from his injury. Even this physician assigned only a minimal rating of five percent. The Commission discounted that opinion based on evidence, unknown to that physician, demonstrating appellant's ability to perform strenuous manual labor without any apparent difficulty. In the videotape that the Commission had before it, appellant was observed operating a yard service and doing such things as lifting heavy machinery, running, and jumping. Appellant was also said to be engaged in cleaning offices. In light of appellant's demonstrated physical capabilities, the Commission gave no weight to the doctor's opinion and concluded that appellant had suffered no functional or anatomical impairment so as to justify an award of permanent disability.

We should be guided in our decision by the standard of review. Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Johnson* v. *American Pulpwood Co.*, 38 Ark. App. 6, 826 S.W.2d 827 (1992). In conducting our review, we have recognized that it is the function

of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *Crow* v. *Weyerhaeuser Co.*, 46 Ark. App. 295, 880 S.W.2d 320 (1994). We have said that the Commission has the duty of weighing medical evidence as it does any other evidence, and that resolving any conflict is a question of fact for the Commission. *Id.* We have further recognized that, although the Commission may not arbitrarily disregard the testimony of any witness, it is not bound by medical opinion. *Reeder* v. *Rheem Mfg. Co.*, 38 Ark. App. 248, 832 S.W.2d 505 (1992). The Commission is also entitled to examine the basis for a doctor's opinion, like that of any other expert, in deciding the weight to which that opinion is entitled. *Id.* The Commission is charged with the duty of translating the evidence into findings of fact. *Johnson* v. *General Dynamics*, 46 Ark. App. 188, 878 S.W.2d 411 (1994).

Fairly recently, we have also observed that the Commission is not limited, and never has been limited, to the consideration of medical evidence alone in arriving at its decision as to the *amount* or *extent* of permanent partial disability suffered by an injured employee. *Id.* In *Johnson* v. *General Dynamics*, the Commission had both denied wage loss benefits and found that the claimant had not sustained a permanent anatomical impairment because the evidence failed to include a numerical impairment rating. We upheld the Commission's denial of wage loss benefits, but we reversed the Commission's decision that appellant was not entitled to benefits for permanent anatomical impairment. We held that the absence of a numerical impairment rating was no impediment to a finding of permanent functional impairment. In making that decision, we considered not only medical evidence but also the testimony of the claimant as to her physical limitations resulting from the injury. And also recently, we considered evidence of the appellant's ability to work as a truck driver ten to twelve hours a day, five to six days a week, in sustaining the Commission's denial of permanent partial disability. *Crow* v. *Weyerhaeuser Co.*, *supra*. More to the point, in *Bibler Brothers, Inc.* v. *Ingram*, 266 Ark. 969, 587 S.W.2d 841 (Ark. App. 1979), we expressly approved of the Commission's consideration of lay testimony in addition to the medical evidence in assessing permanent partial impairment. Nevertheless, the majority holds today that the evidence relied upon by the Commission is not pertinent evidence to consider when determining the existence or degree of permanent functional disability, and that such evidence is only relevant to a determination of wage loss. I can find no support

for this proposition.

"Disability" means incapacity because of injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the injury. Ark. Code Ann. § 11-9-102(5) (1987).[1] Arkansas Code Annotated § 11-9-522(a) (1987) provides:

> A permanent partial disability not scheduled in § 11-9-521 shall be apportioned to the body as a whole, which shall have a value of four hundred fifty (450) weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury.

In *Glass v. Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961), the supreme court held that the legislature's use of the term "loss of the use of the body as a whole" does not mean merely functional disability, but also includes loss of use of the body to earn substantial wages, *i.e.*, wage loss. In so holding, the court relied on a passage from Professor Larson's treatise:

> The key to the understanding of this problem is the recognition, at the outset, that the disability concept is a blend of two ingredients, whose recurrence in different proportions gives rise to most controversial disability questions: the first ingredient of disability in the medical or physical sense, as evidenced by obvious loss of members or by medical testimony that the claimant simply cannot make the necessary muscular movements or exertions; the second ingredient is de facto inability to earn wages, as evidenced by proof that claimant has not in fact earned anything.

233 Ark. at 787, 346 S.W.2d at 686-87 (quoting A. Larson, *The Law of Workmen's Compensation*, § 57.10). While noting the distinction between physical and wage-loss disability, I can find nothing in Larson's or our case law since the decision in *Glass v. Edens* that draws a bright line between the kind of proof that can be considered to support either concept of disability. In no decision, since either *Glass v. Edens* or even the inception of our law on workers' compensation, has it ever been held that evidence demonstrating the lack of functional limitation is not relevant to the issue of

---

[1] This case is governed by the law prior to the 1993 legislative enactment.

functional impairment or disability. Perhaps that is so because common sense dictates a contrary conclusion. While in some instances medical testimony might be considered indispensable, that does not lead to a strict conclusion that non-medical testimony is not relevant to either supplement the medical testimony or to contradict it. Of course, the natural corollary to the decision in this case is that even the claimant's testimony as to his or her physical abilities is not competent evidence for the Commission to consider in assessing functional or anatomical impairment.

It has been held that in examining the record for substantial evidence to support an award or denial of compensation for permanent partial disability, the examination is directed to all the competent evidence and is not confined to the medical evidence alone. *Vaccaro-Grobmeyer Co. v. McGarity*, 249 Ark. 1132, 463 S.W.2d 372 (1971). And Larson, as is embodied in our case law, *see, e.g., Reeder v. Rheem Mfg. Co.*, *supra*, recognizes that if a Commission wishes to enter an award contradicting the medical testimony, it must take care to show in the record the valid competing evidence or considerations that impelled it to disregard the medical evidence. 2B A. Larson, *The Law of Workmen's Compensation*, § 79.52(d) (1995). That is precisely what the Commission did here. It evaluated the medical testimony assigning a five percent impairment rating against evidence demonstrating that the appellant was not suffering from any degree of functional or anatomical impairment, and it concluded that appellant was not entitled to permanent partial disability benefits. To make that assessment is undeniably within the purview of the Commission, and I cannot say that its disregard of the medical opinion was arbitrary in any way. In sum, the Commission's decision displays a substantial basis for the denial of permanent disability benefits.

Perhaps the majority's confusion stems from the fact that the videotape happens to show appellant performing work-related activities. If so, the majority has missed the point. The point made by the tape is not that appellant can perform his job, but rather that the activities portrayed, regardless of their nature, tend to demonstrate that he is not, in fact, physically impaired in any degree.

To be of the opinion that the Commission is only permitted to consider expert medical opinion and testimony in determining the existence or degree of permanent functional or anatomical impairment is without precedent. To hold that evidence showing the

absence of physical limitation is irrelevant is nothing short of preposterous. With all due respect, such evidence is highly probative in determining the existence or degree of permanent disability. I cannot agree then with this court's erection of a line of demarcation in the kind of proof that can be offered. Furthermore, I seriously question the majority's citation to the AMA Guidelines as authority. Our legislature never adopted those standards and to use what amounts to a preface in that literature to add substance to our body of law is not only misguided but also strikes me as judicial legislation.

In closing, I also take issue with the majority's direction to the Commission on remand. Its discussion of Dr. McCarron's testimony gives the firm impression that the court considers his opinion more worthy of belief. It should go unsaid that it will be for the Commission to decide issues of credibility and weight to be given the various witnesses' testimony.

ROGERS, J., joins in this dissent.