PUROLATOR COURIER and Liberty Mutual Insurance Company *v.* Billy Darrell CHANCEY and Second Injury Fund

CA 92-81                                    841 S.W.2d 159

Court of Appeals of Arkansas
Division II
Opinion delivered November 4, 1992

2

*Friday, Eldredge & Clark*, by: *J. Michael Pickens*, for appellant.

*Terry Pence*, for appellee.

JOHN E. JENNINGS, Judge. In this workers' compensation case Purolator Courier, the employer, appeals from an order of the Commission holding that Billy Darrell Chancey was entitled to additional temporary total disability benefits; that Chancey sustained permanent partial disability of sixty percent to the body as a whole; and that the Second Injury Fund had no liability on the claim and was dismissed. Appellant argues that the "Commission erred in finding that Chancey's poliomyelitis or encephalitis constituted a 'latent condition' thereby relieving the Second Injury Fund of Liability." We disagree and affirm.

While working for appellant as a truck driver on January 2, 1985, Chancey slipped and fell from the running board of his van and hurt his back. At the time Chancey was thirty-nine years old. He saw a Dr. McDaniel, who referred him to Dr. Kaplan, a neurosurgeon. After a week of hospitalization and tests, Dr. Kaplan's diagnosis was lumbar strain and radiculitis. Chancey continued to experience back pain, for which he took Darvocet and other pain medication. After six months of conservative treatment, Chancey was referred to the Baptist Pain Clinic in Memphis, Tennessee, where he stayed as an in-patient for six weeks under the care of Dr. William C. North. After discharge in September 1985, he continued to return for regular visits and continued taking pain medication. Follow-up notes by Dr. North indicate that Chancey continued to experience pain and weakness.

Dr. Kaplan's discharge summary dated January 24, 1985, noted that

> [Chancey] may have had polio when he was eleven years old. . . . [h]e awakened and was very ill one morning. He stated that the could move only his left upper extremity. His left upper extremity has been larger than his right and his left lower extremity has been larger than his right lower extremity since he had this central nervous inflammation

when he was eleven years old.

. . . .

Old history of central nervous infection, probably polio when eleven years old.

After a follow-up visit on April 5, 1985, Dr. Kaplan sent a letter to Dr. McDaniel dated April 8, 1985, noting that

[Chancey] had mild spasticity and atrophy of his right extremities, mildly impaired alternate motion rate on the right, and questionable weakness of his right extremities — all probably related to childhood central nervous system disease.

A "Physical Therapy Initial Evaluation — Pain Unit" document dated August 12, 1985, shows that "Pt. states he has recently been told he had polio as a child." Dr. North's discharge summary dated September 23, 1985, states:

Preadmission Diagnosis:

1. Low back pain

2. Psychological factors contributing to low back pain.

Discharge Diagnosis:

1. Clinical myofascitis of the lumbar muscles.

Secondary Diagnosis:

1. Psychological factors affecting medical illness.

2. Post-poliomyelitis.

. . . .

Past Medical History:

He had polio in his childhood. There is a minimal residual rightsided weakness.

A pain center office note dated July 23, 1986, by Dr. Martin Fodiman states, "The patient's chief problem is myofascitis of the lumbar muscles and post poliomyelitis syndrome, also psychological factors effecting his medical illness." In a letter dated August

7, 1986, Dr. North stated:

>Mr. Chancey is unique in that his injury coincided with the natural course of old poliomyelitis where there is gradual deterioration of muscle strength. In the absence of some precipitating cause which results in a significant period of time in which muscles are not used, this deterioration is generally so gradual that it is not recognized as being a factor in the aging process.

>It is our impression that Mr. Chancey was inactive for so long that to rehabilitate his muscles, which is always a very slow process, required a long period of time. As a result of the exercise program Mr. Chancey has a muscle imbalance which is marked and accentuates his disability. He has made considerable progress in dealing with this issue. He appears to us to be extremely well motivated, much better than many of our patients. However, it will be at least two or three years before Mr. Chancey will have learned to function within the limitations imposed by his poliomyelitis deficits and the effects of the injury.

Notes from an examination by Dr. Dillard Denson dated June 21, 1988, recount Chancey's history of his childhood illness as well as the results of the examination. Those notes show, "IMPRESSION: 1. Polioencephalitis; 2. Possible poliomyelitis; 3. Post-polio syndrome."

A letter from Dr. Stevenson Flanigan dated August 9, 1988, states:

>I believe [Chancey] has been a victim of a polio-myeloencephalitis that was likely the disorder with which he was afflicted as a youngster. The pain and limitations identified with the pain are likely an aggravation of the condition with which he was functionally affected until the time of his accident. Apart from the restricted range of movements associated with contractors and possibly a mild degree of spasticity, there is no objective indication of an alteration in his functional capacity that could be attributed to the accident.

During continued treatment by Dr. North, Chancey underwent a vocational assessment with favorable results and was recom-

mended for vocational rehabilitation. After a return visit on June 17, 1987, Chancey was given a prescription for Xanax, which he took while continuing with other medication for pain. A progress note dated March 23, 1988, indicates that the pain clinic had done all they could for him. A letter from Dr. North dated June 15, 1988, stated:

> I should like to briefly summarize Mr. Chancey's situation. He carries a diagnosis of:
>
> (1) Chronic lumbar myofascitis secondary to injury
>
> (2) Right lower extremity in back weakness secondary to encephalitis
>
> (3) Psychological factors affecting medical illness
>
> All three of these diagnoses are interrelated and perhaps causally related. The low back injury which he sustained is not an unusual injury. However, the effects of it and the response to therapy were not as dramatic as would probably have occurred had he not had the residual weakness to begin with. Finally, the combination of the latent neuromuscular problem coupled with the failure to respond effectively to therapy has led him to a situation of anxiety and depression that is related to his inability to perform his usual tasks.
>
> We feel that he has probably received maximum medical benefit from our therapy. Evaluation of his physical findings which include atrophy of the muscles of the right lower leg, limitation of motion of the right knee and ankle, and pain associated with the changes in the knee and spine joints, give him an impairment of 50% of the right lower extremity which translates into 20% impairment of the whole person. He will need continuing supervision of an exercise program to maintain his muscle strength. He also will need some medication. It is my understanding that he has moved from the Memphis area to Little Rock.
>
> Could you set him up with a local physician for maintenance care? Enclosed is a copy of medication record. Please give Mr. Chancey a call when this has been arranged.

> I am sorry that we cannot do more for Mr. Chancey but I do not believe that there is anything further that can be done to improve his function apart from being able to find a job that will fit within his limitations of motions and strength and to let him improve his earnings and therefore his outlook on life.

In the August 9, 1988, letter Dr. Flanigan noted that one of Chancey's major problems was habitual use of Motrin, Darvocet N, Xanax, and Halcion, and recommended professional help in withdrawal from those drugs. Chancey was successfully treated at the VA for his substance dependency in April 1989.

At the hearing, Chancey testified that when he was about eleven years old he woke up one morning unable to move anything except his left arm. He was examined at a hospital and released. After a few weeks of chiropractic treatment he got better and was able to walk. He saw another doctor regarding a cyst on his neck. He was hospitalized for thirty-one days while tests were run. It was two months before he could return to school. After two more months in a special physical education class he seemed to have fully recovered and was taken out of the special class. For the remainder of his junior high and high school career he was active in athletics, participating on the track team and playing basketball and baseball. After graduation he joined the Air Force as a supply clerk and served overseas in Vietnam. Upon discharge from the Air Force, he returned to Tulsa, Oklahoma, and took a delivery job. He worked numerous other jobs for the next fifteen years or so, many involving delivery and supply-type duties. He began working for Purolator in 1980, where he was employed at the time of his 1985 injury. He testified that he never again suffered any physical problems related to his period of childhood illness.

Arkansas Code Annotated section 11-9-525(a)(3) (1987) provides:

> It is intended that latent conditions which are not known to the employee or employer not be considered previous disabilities or impairments which would give rise to a claim against the Second Injury Fund.

Based on Chancey's testimony, the deposition of Dr. North,

and the other medical evidence, the Commission found that Chancey suffered from a neurological disorder which was latent until it was accelerated by his work-related injury. The Commission said:

> In the present case, as discussed above, we find that the evidence clearly establishes that the claimant's neurological condition was latent. As discussed, the claimant was aware of the size differences, the infrequent weakness, and possibly the slight limp. However, he felt that these were residuals of the childhood incident. There is no evidence that the claimant had any knowledge, or should have had any knowledge, that he suffered from any condition which would result in the progressive deterioration of his muscles. Likewise, there is no evidence that the employer was aware of any such condition. Moreover, we find that the claimant's current disabled condition is the result of the muscle deterioration and weakness attributable to the inactivity produced by the work-related injury. Consequently, we find that the pre-existing condition resulting in the claimant's disability condition was latent and unknown to either the employer or the claimant.

"Latent condition" is not defined by statute. The phrase "latent injury" has ordinarily arisen in workers' compensation cases in the context of the statute of limitations. *See, e.g., Arkansas Louisiana Gas Co.* v. *Grooms*, 10 Ark. App. 92, 661 S.W.2d 433 (1983); *Woodard* v. *ITT Higbie Mfg. Co.*, 271 Ark. 498, 609 S.W.2d 115 (Ark. App. 1980). The word "latent" applies to that which is present without showing itself. *Sanderson & Porter* v. *Crow*, 214 Ark. 416, 216 S.W.2d 796 (1949). Latent means hidden, concealed, or dormant. *McDaniel* v. *Hilyard Drilling Co.*, 233 Ark. 142, 343 S.W.2d 416 (1961). An injury is latent until its substantial character becomes known or until the employee knows or should reasonably be expected to be aware of the full extent and nature of his injury. *Arkansas Louisiana Gas Co.* v. *Grooms, supra.* The question whether an injury is latent is one of fact, subject to the substantial evidence standard on review. *See Woodard* v. *ITT Higbie Mfg. Co., supra; McDaniel* v. *Hilyard Drilling Co., supra.* When reviewing a finding of fact made by the Commission, we must affirm if the Commission's

decision is supported by substantial evidence. *Welch's Laundry & Cleaners* v. *Clark*, 38 Ark. App. 223, 832 S.W.2d 283 (1992). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *College Club Dairy* v. *Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988).

In the case at bar the fact that there were visible signs of the claimant's underlying disorder does not preclude a finding that the condition which disabled him was latent at the time of the injury. Until the injury, the claimant was able to perform normally, to play high school sports, to serve in the Air Force, and to perform manual labor. The evidence supports a finding that, at the time of the injury, the full extent and nature of his childhood illness and its effect were not known to him or to his employer. *See* Ark. Code. Ann. § 11-9-525(a)(3); *Arkansas Louisiana Gas Co.* v. *Grooms, supra.*

Affirmed.

DANIELSON and MAYFIELD, JJ., agree.