SECOND INJURY FUND *v.* JAMES RIVER
CORPORATION, Employer, Aetna Insurance Company,
Carrier and Floyd G. Darter

CA 95-278                                             920 S.W.2d 869

Court of Appeals of Arkansas
Division I
Opinion delivered May 8, 1996

*Mark E. Lang*, for appellant.

*Bethell, Callaway, Robertson, Beasley, & Cowan*, by: *John R. Beasley*, for appellees James River Corp. and Aetna Ins. Co.

*Walker Law Firm,* by: *Eddie H. Walker, Jr., William J. Kropp, III,* and *R. Scott Zuerker,* for appellee Floyd G. Darter.

MELVIN MAYFIELD, Judge. The Second Injury Fund has appealed a decision of the Worker's Compensation Commission which held it liable for all of appellee-claimant's benefits above a nine percent impairment rating to the body as a whole. Appellant argues that the Commission's finding that the second and third requirements which trigger Second Injury Fund liability were met is not supported by substantial evidence.

The claimant Floyd Darter contended he was permanently and totally disabled. At the time of the hearing he was fifty-six years old, had a fifth-grade education, and had been given training in the military equivalent to an eighth-grade education but said he couldn't spell very well, although he could read "some." Mr. Darter had worked for James River Corporation for almost seventeen years, when, on July 27, 1991, an eighty-pound hoist fell several feet and hit him on the head, left shoulder, and arm. He was off work for four days, treated conservatively, and went back to work. However, because of recurring pain, on July 29, 1992, surgery was performed on his shoulder by Dr. Steven Heim. Mr. Darter was off work for eight or nine weeks, then released to return to work with a permanent physical impairment rating of nine percent to the body as a whole, and a twenty-five pound weight restriction. Darter continued to work until June 10, 1993, when he quit and has not worked since.

While working for appellee James River, Darter had also sustained work-related injuries to his shoulder and neck in 1989 and had surgery for bilateral carpal tunnel syndrome. In addition, he had numerous non-work-related physical problems. While in the Army in 1959 Darter injured his lower back lifting a pot of potatoes, and he has had back problems which have continued to worsen ever since. He has been diagnosed with chronic obstructive pulmonary disease and degenerative disc disease in the cervical and lumbar spine. He also has severe hypertension that is difficult to control, tendinitis of the left shoulder, peripheral vascular disease with vascular insufficiency to the right leg which causes numbness and makes it difficult for him to stand or walk, and shortness of breath as a result of over forty years of smoking two packs of cigarettes a day.

Dr. L.R. Darden stated that Darter was totally disabled, and

the administrative law judge agreed. The law judge also held that the appellee employer was only responsible for Darter's nine percent physical impairment and that the Second Injury Fund was liable for the remainder of his disability. The Commission affirmed and adopted the opinion of the administrative law judge, and it is this decision that has been appealed.

■ In *Mid-State Construction Co.* v. *Second Injury Fund*, 295 Ark. 1, 746 S.W.2d 539 (1988), the Arkansas Supreme Court set out the requirements for Second Injury Fund liability:

> It is clear that liability of the Fund comes into question only after three hurdles have been overcome. First, the employee must have suffered a compensable injury at his present place of employment. Second, prior to that injury the employee must have had a permanent partial disability or impairment. Third, the disability or impairment must have combined with the recent compensable injury to produce the current disability status.

295 Ark at 5, 746 S.W.2d at 540. It is clear that the first hurdle was satisfied by the July 1991 injury. But the appellant Second Injury Fund argues that there is not sufficient evidence to support the Commission's finding that hurdles two and three have been met.

■ We have consistently said that the findings of the Commission must be upheld unless there is no substantial evidence to support them and that we will reverse only if we are convinced that fair-minded persons with the same facts before them could not have reached the same conclusion arrived at by the Commission. *Price* v. *Little Rock Packaging Co.*, 42 Ark. App. 238, 856 S.W.2d 317 (1993). And in the very recent case of *Kuhn* v. *Majestic Hotel*, 324 Ark. 21, 918 S.W.2d 158 (1996), the Arkansas Supreme Court, citing a previous case of that court, said that "substantial evidence exists if reasonable minds could have reached the same conclusion" as that reached by the Commission and that reversal is proper only if "fair-minded persons considering the same facts could not have reached the same conclusion." Therefore, we examine the Commission's findings in the instant case in keeping with the standards set out in the above cases.

■ As to the second hurdle set out in the *Mid-State Construction* case, the Commission found that Darter had high blood pressure, back problems, chronic obstructive pulmonary disease, shoul-

der problems, bilateral carpal tunnel syndrome, and vascular problems. Appellant contends, however, that these conditions do not meet the requirements of the second hurdle under *Mid-State* because they were either latent, arose after the date of injury, were injuries sustained while in the employment of James River, or were not substantial enough to constitute a disability or impairment. We agree.

Arkansas Code Annotated § 11-9-525(a)(3) (1987) provides:

> It is intended that latent conditions which are not known to the employee or employer not be considered previous disabilities or impairments which would give rise to a claim against the Second Injury Fund.

In the case of *Purolator Courier* v. *Chancey*, 40 Ark. App. 1, 841 S.W.2d 159 (1992), we reviewed cases by both this court and our supreme court which had held that "latent" means that which is present without showing itself; hidden, concealed, or dormant. And we said that under the above statute: "An injury is latent until its substantial character becomes known or until the employee knows or should be reasonably expected to be aware of the full extent and nature of his injury." 40 Ark. App. 6-7, 841 S.W.2d at 162.

The evidence in this case clearly shows that Darter's chronic obstructive pulmonary disease (COPD) was not discovered until December 18, 1992, when a chest x-ray was made. This was more than a year after his July 1991 injury. The x-ray report states that no old films are available, but there is "apparent hyperinflation of the lungs suggesting COPD." However, a lung biopsy was done on August 4, 1989, which revealed only a benign mass, and Darter was returned to work with no restrictions. Dr. Darden's progress notes made in 1990 state that Darter is "a little short of breath and he coughs and his throat is irritated and his head feels stopped up." However, the report also states that "his lungs don't sound stopped up." Although the doctor advised Darter to stop smoking, Dr. Larry Travis noted on June 24, 1991, that Darter was still smoking. Dr. Travis also found that Darter had gastritis and duodenitis but that there was "no evidence of ulceration" and that "the esophagus is normal." The doctor also wrote on his progress record "no significant abnormalities noted other than he is very agitated and nervous." And he gave Darter a prescription for Tagamet with one refill.

■ We do not believe there is substantial evidence to support a finding that the "substantial character" or the "full extent and nature" of Darter's pulmonary disease was known when he was injured in July of 1991. Therefore, under the law his condition was latent at that time and it cannot qualify as a prior disability or impairment which would trigger Second Injury Fund liability in this case.

Also, Darter's vascular problems were not diagnosed or treated until after his injury in July of 1991. It was not until July 19, 1993, that Dr. Rowland P. Vernon of the Holt Krock Clinic reported:

> [Darter] had a peripheral vascular lab exam which suggests that he has bilateral femoral popliteal segment disease, worse on the right than the left by pulse wave form studies. And he has as well abnormal femoral pulse wave forms.
>
> On exam, the patient has no femoral pulses to speak of. He has no pedal pulses. He has bruits all over his abdomen. He has been recently unable to work for some time.
>
> It would be my impression that he needs to stop smoking and that he might reasonably be offered arteriography and possible aortoiliac bypass. He is indeed functionally impotent at this point and has been for some time. . . .

There is no evidence that Darter or his employer knew of this condition until after the 1991 injury. Darter stopped working on June 10, 1993. He was referred to Dr. Michael Standefer who examined him on June 29, 1993. Dr. Standefer's record of that examination made no mention of a vascular problem or complaint. However, Dr. Standefer referred Darter to Dr. James S. Deneke and his report of September 28, 1993, states that Darter said his hips hurt "with walking even a block." Dr. Deneke also reported that Darter had a history of "vascular insufficiency to the right leg." This evidence falls short of showing that Darter was aware — or should have been — of the substantial character or the full extent and nature of his vascular problem until it was diagnosed by Dr. Vernon in July of 1993.

■ The employer, James River Corporation, argues that Dr. Larry Travis noted in his record of June 24, 1991, that Darter had peripheral neuropathy in his feet. But, as we have pointed out, that record also stated that Darter had "no significant abnormalities"

other than he was "agitated and nervous." The notation on the record made by Dr. Travis indicates that his finding as to Darter's feet was based on "swelling." Obviously this could result from working all day while standing on his feet, or from some other cause, and does not show that Darter knew or should reasonably be expected to aware of the substantial character or full extent and nature of the vascular problem that was found in 1993. Thus, we think that the substantial evidence shows this was a latent condition.

■ Also, the Second Injury Fund is not liable for injuries sustained during the employment by one employer. *Riceland Foods, Inc.* v. *Second Injury Fund*, 289 Ark. 528, 715 S.W.2d 432 (1986); *McCarver* v. *Second Injury Fund*, 289 Ark. 509, 715 S.W.2d 429 (1986); Ark. Code Ann. § 11-9-525(a)(1) (1987). Darter's 1987 shoulder injury, which was surgically repaired in 1992; his bilateral carpal tunnel syndrome, which was surgically corrected in 1991; and his right shoulder and arm tendinitis were all sustained while Darter was working for James River Corporation, and even though Darter said these conditions became worse after the hoist fell on him in July of 1991 they cannot support Second Injury Fund liability. *See Chamberlain Group* v. *Rios*, 45 Ark. App. 145, 871 S.W.2d 595 (1994).

■ Darter's back condition and his high blood pressure were not sustained during Darter's employment with James River or discovered after the 1991 injury; however, in *Mid-State Construction, supra,* the court said:

> It is the *substantial nature* of the impairment which is emphasized, and the elements of compensability, none of which may have existed as to the particular claimant, merely assist the fact finder in his *determination as to whether the former condition was sufficient in degree to constitute an impairment qualifying the claimant as one of the "handicapped" for whose benefits the statute was enacted.*

295 Ark. at 6, 746 S.W.2d at 540 (emphasis added).

■ Although we view the evidence in the light most favorable to the decision of the Commission, that standard neither insulates the Commission from judicial review nor renders our function in these cases meaningless, and we will reverse the Commission when we are convinced that fair-minded persons with the same facts before them could not have reached the same conclusion

arrived at by the Commission. *Morgan* v. *Desha County Tax Assessor's Office*, 45 Ark. 95, 871 S.W.2d 429 (1994). When the "substantial nature" of Darter's overall physical condition is considered, we do not think there is substantial evidence to support a finding that he was "handicapped" prior to his 1991 injury. There is evidence that at the time of his 1991 injury Darter was accustomed to working up to twelve hours per day and usually more than forty hours per week; he had no medical restrictions; and he consistently took physically strenuous jobs.

■ The appellant also contends that the third hurdle of *Mid-State Construction* has not been met in this case, i.e., that there is no substantial evidence to support the Commission's finding that Darter's pre-existing conditions and his 1991 injury *combined* to cause his current disability status. Again we agree. We note that Darter testified that he purposely took more physically demanding jobs because they paid more and did not normally include any paper work. Darter also testified that before his 1991 injury he worked long hours, sometimes as long as twelve to sixteen hours per day, and sometimes seven days per week. The safety coordinator for James River confirmed that Darter always did his job prior to his 1991 injury. Moreover, the coordinator testified that he had observed Darter working on the job for a number of years, and he never had to modify a job so that Darter could do it. We said in *Arkansas Highway and Transportation Department* v. *McWilliams*, 41 Ark. App. 1, 6, 846 S.W.2d 670, 673-74 (1993), that in considering whether an employee's prior impairment combined with his last work-related injury to produce his current disability status, it was proper to consider his physical ability to work before his work-related injury. We think it also important that even after his 1991 injury, Darter continued to work for almost two years, before he quit. And it is not disputed that he was totally and permanently disabled after he quit.

■ Under the evidence in this case, we think fair-minded persons would find that Darter's current disability arises from a combination of his latent conditions, his prior injuries sustained while working for James River, and his 1991 injury. In this connection we quote the following from the reply brief of the Second Injury Fund:

> The Appellee/Claimant in its brief makes a puzzling argument. Claimant's argument concerns the statement in

the Fund's brief that he worked 12-16 hour days prior to his injury. Claimant states that this is not a meritorious argument by the Fund, as he is not required to show that any prior conditions caused any loss of earning capacity. The puzzling part of this is that the Fund has never argued that Claimant needed to show a loss of earning capacity, nor does its brief even contain the words "earning capacity."

The Fund's argument is that the Appellee/Claimant, at the time of his injury, was capable of working long hours at heavy labor. As such, he was not one of the "handicapped" for whose benefit the statute was enacted. . . . Neither of the Appellees directly address this position.

We find that the Commission's decision is not supported by substantial evidence; therefore, the Second Injury Fund is not liable for any compensation to which the employee Darter is entitled.

Reversed and remanded.

JENNINGS, C.J., and NEAL, J., agree.