Cite as 2024 Ark. App. 253

# ARKANSAS COURT OF APPEALS
## DIVISIONS II & III
### No. CV-22-817

| | | |
|---|---|---|
| LEONARD REED | | Opinion Delivered April 17, 2024 |
| | APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. G707727] |
| V. | | |
| M.A. MORTENSON COMPANIES AND ARCH INSURANCE COMPANY/GALLAGHER BASSETT SERVICES, INC. | | |
| | APPELLEES | AFFIRMED |

## RITA W. GRUBER, Judge

The Arkansas Workers' Compensation Commission unanimously found that Leonard Reed did not prove entitlement to additional temporary total-disability (TTD) benefits for his compensable injury beyond April 5, 2018, the date on which Dr. David Wassell first assessed maximum medical improvement (MMI). The injury occurred on October 20, 2017, when Mr. Reed was working as a truck driver, and a four-pound piece of metal struck his right leg. Dr. Wassell, an orthopedic surgeon, performed an open reduction and internal fixation of the right-tibial-plateau fracture on November 1, 2017. Mr. Reed subsequently received TTD benefits and additional medical care that included physical therapy.

The Commission entered its decision in this case on October 13, 2022. On appeal, Mr. Reed contends that the Commission erred in finding that his healing period ended on April 5, 2018, and he therefore was not entitled to additional TTD benefits beyond that date. We affirm.

In an office visit on March 7, 2018, Dr. Wassell viewed an x-ray of Mr. Reed's right knee and performed a battery of tests designed to evaluate his postop recovery. The medical record includes Dr. Wassell's office notes of the x-ray images:

> Findings: No significant soft tissue swelling or radiopaque foreign body is demonstrated. No joint effusion is evident. No acute fracture is identified. There are redemonstrated findings of lateral tibial plateau compression plate and screw internal fixation. Radiographic union is complete. There is no evidence of hardware loosening or screw fracture.
> Impression
> No evidence of hardware loosening.

Dr. Wassell felt that Mr. Reed had reached MMI on March 7 and could return to light-duty work. But because Mr. Reed did not feel capable of returning to his previous work, Dr. Wassell ordered a functional capacity evaluation (FCE) to determine the level of work Mr. Reed could perform.

The FCE was performed on March 26, 2018. On April 5, after receiving the FCE report, Dr. Wassell assessed a 0 percent impairment rating and reiterated his opinion from the March 7 office visit that Mr. Reed was capable of returning to light-duty work. Dr. Wassell opined that Mr. Reed demonstrated the ability to perform light-duty work, noting, in part, that the FCE report reflected a lack of reliable effort by Mr. Reed. Dr. Wassell then

released Mr. Reed from his care. Mr. Reed later testified that he had been in pain both during and after the FCE and that he had grown tired during the hours of testing.

After Dr. Wassell released him, Mr. Reed returned to Dr. Christopher Morgan, the company doctor who had seen him after the accident and referred him to Dr. Wassell. Dr. Morgan then referred Mr. Reed to Dr. Dennis Yelvington, who saw him for leg pain on May 1, 2018, and diagnosed chronic pain associated with significant psychosocial dysfunction. On July 23, 2018, Dr. Morgan wrote that Mr. Reed's injury was work related and that he could not return to work due to restrictions. Dr. Morgan referred Mr. Reed to orthopedic surgeon Dr. James Tucker, who administered injections to Mr. Reed's right knee and referred him to a pain-treatment facility. On February 25, 2019, Dr. Morgan noted that Mr. Reed had ongoing pain-related issues with his right knee, had been seen multiple times in orthopedics for ongoing issues with this knee, and was already in pain management for chronic back pain.[1] Dr. Morgan wrote that Mr. Reed needed chronic pain management for his right knee. Dr. Wassell subsequently agreed in his deposition that it would be reasonable and necessary to at least evaluate Mr. Reed for chronic pain management of his knee.

At a December 13, 2021 hearing before an administrative law judge, Mr. Reed contended that Dr. Wassell incorrectly assessed a rating of 0 percent and instead should have assessed a minimum rating of 2 percent to the whole body and 5 percent to the lower extremity. He claimed that he was entitled to additional medical treatment and TTD

---

[1]The chronic back pain was from a previous injury.

3

benefits, to ratings of permanent partial disability, and to travel expenses for medical appointments. Mr. Reed testified that he had been told his employer did not have light-duty work for him, that he had traveled from Stuttgart to Little Rock for appointments with Dr. Tucker and for pain management, and that respondents would not cover additional treatments.

The ALJ found that Mr. Reed had proved he was entitled to additional medical treatment. She found that he had credibly testified he was unable to return to work. She attached minimal weight to Dr. Wassell's determination of a zero impairment rating and great weight to Dr. Morgan's opinion that Reed was unable to return to work. She found that Reed remained in his healing period and was unable to work and that it would be premature to assess an impairment rating. Therefore, she held the issue of permanent partial disability in abeyance.

Respondents appealed the ALJ's decision to the Commission. The Commission reversed the ALJ's finding that Mr. Reed proved he was entitled to additional TTD compensation "from July 23, 2018, until [he] is released at maximum medical improvement by Dr. Tucker." The Commission instead found that Mr. Reed did not prove entitlement to additional TTD benefits beyond April 5, 2018, the date that Dr. Wassell assessed MMI in a letter to respondents. The Commission, finding that Dr. Wassell's opinion was corroborated by the record, gave his opinion significant weight; found that Mr. Reed reached the end of his healing period no later than April 5, 2018; and therefore found that Mr. Reed was not entitled to additional TTD benefits beyond that date. It further found that Mr. Reed proved

4

he was entitled to additional medical treatment and a permanent anatomical impairment in the amount of 12 percent to his right lower extremity.[2]

Mr. Reed contends on appeal that the ALJ's opinion appropriately analyzed the shortcomings of Dr. Wassell's opinions, gave them minimal weight, and gave greater weight to both Dr. Morgan's opinion and Mr. Reed's testimony that he was in pain during and after the FCE. However, we do not review the decision of the ALJ; rather, we review the decision of the Commission, which performs a de novo review of the evidence. *Pharmerica v. Seratt*, 103 Ark. App. 9, 11, 285 S.W.3d 699, 701 (2008).

The law requires the Commission to render findings adequate for appellate review but does not require the Commission to render findings on every conceivable point of contention and dispute between the parties. *See Williams v. Prostaff Temps.*, 64 Ark. App. 128, 979 S.W.2d 911 (1999). The substantial-evidence standard of review requires us to affirm if the Commission's decision displays a substantial basis for the denial of relief. *Sanchez v. Pork Grp., Inc.*, 2012 Ark. App. 570, at 1–2. We view the evidence and all reasonable inferences deducible from the Commission's decision in the light most favorable to the Commission's findings. *Id.* at 9.

---

[2]The Commission has adopted the American Medical Association *Guides to the Evaluation of Permanent Impairment* to be used in assessing anatomical impairment. *Little Rock Ambulance Auth. v. Binkley*, 2022 Ark. App. 229, at 11, 646 S.W.3d 193, 202. It is the Commission's duty, using the *AMA Guides*, to determine whether the claimant has proved that he is entitled to a permanent-impairment rating. *Id.* The Commission did so in this case.

The Commission may accept and translate into findings of fact only those portions of testimony it deems worthy of belief; the appellate court is foreclosed from determining the credibility and weight to be accorded testimony. *Barber v. Pork Grp., Inc.*, 2012 Ark. App. 138, at 5. The Commission has authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Watson v. Highland Pellets*, 2022 Ark. App. 132, at 6, 643 S.W.3d 267, 270; *Stafford v. Arkmo Lumber Co.*, 54 Ark. App. 286, 288, 925 S.W.2d 170, 172 (1996). In deciding the weight and credibility of a doctor's opinion, the Commission is entitled to review the basis for it. *Maverick Transp. v. Buzzard*, 69 Ark. App. 128, 10 S.W.3d 467 (2000).

"The Commission is authorized to decide which portions of the medical evidence to credit and to translate this evidence into a finding of permanent impairment using the AMA *Guides*; thus, the Commission may assess its own impairment rating rather than rely solely on its determination of the validity of ratings assigned by physicians." *Ark. Dep't of Corr. v. Washington*, 2024 Ark. App. 181, at 6, ___ S.W.3d ___, ___. In doing so, "the Commission examines the entire record." *Id.* at 7, ___ S.W.3d at ___. We will reverse the Commission's decision only when we are convinced that fair-minded persons with the same facts before them could not have reached the findings arrived at by the Commission. *Maupin v. Pulaski Cnty. Sheriff's Office*, 90 Ark. App. 1, 5, 203 S.W.3d 668, 670 (2005).

Here, it is true that the Commission's opinion did not specifically address Dr. Wassell's testimony that he did not read the entire FCE report. The Commission instead relied on Dr. Wassell's testimony that he stood by his prior conclusion that Mr. Reed reached

6

MMI on or about March 7, 2018, and that he sustained 0 percent permanent impairment under the AMA *Guides*. The Commission noted that Dr. Wassell testified in his deposition, "Based on my documentation and everything that I documented, . . . based on what I examined and what I compared it to and looked at," he stood by his prior opinion that no impairment rating was warranted. Additionally, the Commission summarized the extensive medical record in this case.

The Commission recited sufficient findings of fact in its written decision to constitute substantial evidence supporting the denial of benefits. It was within the Commission's purview to weigh the evidence, interpret medical opinions, and translate into findings of fact only those portions of testimony it deemed worthy of belief. Because the Commission's decision displays a substantial basis for the denial of relief, we affirm.

HARRISON, C.J., and GLADWIN, WOOD, and MURPHY, JJ., agree.

BARRETT, J., dissents.

**STEPHANIE POTTER BARRETT, Judge, dissenting**. The only doctor who opined that the claimant had reached the end of his healing period stated that he based his opinion on a functional capacity report that he later admitted he did not read fully nor understand. The majority affirms the Arkansas Workers' Compensation Commission determination that the appellant, Leonard Reed ("Reed"), reached the end of his healing period on April 5, 2018, and was not entitled to additional temporary total-disability (TTD) benefits beyond that date. Because I do not believe the Commission's findings are supported by substantial evidence, I respectfully dissent.

7

On October 20, 2017, Reed was an employee of Mortenson. While working, Reed was struck in his leg, just below his right knee, by a four-pound piece of scrap metal. He was able to see the company doctor, Dr. Christopher Morgan, four days later. Dr. Morgan ordered an x-ray of Reed's leg, took him off work, gave him pain medication, and referred him to Dr. David Wassell, an orthopedist. Dr. Wassell discovered a fracture in Reed's right shin and additional breaks in his knee and then performed surgery to install a plate and some screws in his shin. Reed attended all physical-therapy sessions that Dr. Wassell recommended and was compliant with all instructions. Dr. Wassell also prescribed additional physical therapy, but that was denied by the respondents. Reed also attended a functional capacity evaluation (FCE), after which Dr. Wassell wrote that Reed had reached maximum medical improvement, had a 0 percent impairment rating, and could return to light-duty work. Mortenson had no light-duty work available.

After Dr. Wassell released him, Reed continued to see Dr. Morgan as well as Dr. Dennis Yelvington, a doctor in the same clinic as Dr. Morgan. Dr. Morgan wrote a letter in July 2018 stating that Reed could not return to work and sent Reed for pain treatment at Pain Centers of America, but Reed was discharged because his treatment was not covered by Mortenson's workers'-compensation insurance carrier. Reed was referred to and saw several other medical professionals, but the treatment he received from them was also not paid for by the insurance carrier.

The administrative law judge ("ALJ") found that Reed had proved by a preponderance of the evidence that the medical treatment he had received as well as future medical

treatment was reasonably necessary and that he was entitled to TTD compensation from July 23, 2018, until he was released at maximum medical improvement (MMI). Because Reed had not yet reached MMI, the issue of permanent partial-disability benefits was held in abeyance, but the ALJ determined that Reed was entitled to related travel expenses for the medical treatment of record, and an attorney's fee on all indemnity benefits was awarded. Mortenson then appealed to the Commission. In an opinion filed on October 13, 2022, the Commission affirmed in part and reversed in part.

The Commission found that Reed had proved he was entitled to additional medical treatment and that he was entitled to permanent anatomical impairment in the amount of 12 percent to the right lower extremity based on the American Medical Association *Guides to the Evaluation of Permanent Impairment.* Reed then appealed the decision on the ground that the Commission erred in its determination that he had reached the end of his healing period and was not entitled to additional TTD benefits beyond April 5, 2018.

The standard of review in workers'-compensation cases is "whether there is substantial evidence to support the Commission's decision." *Schall v. Univ. of Ark. for Med. Scis.*, 2017 Ark. App. 50, at 2, 510 S.W.3d 302, 303. While "we view the evidence in the light most favorable to the decision of the Commission, that standard neither insulates the Commission from judicial review nor renders our function in these cases meaningless, and we will reverse the Commission when we are convinced that fair-minded persons with the same facts before them could not have reached the same conclusion." *Second Inj. Fund v. James River Corp.*, 53 Ark. App. 204, 211, 920 S.W.2d 869, 873 (1996).

9

The Commission determined that Reed had reached the end of his healing period largely because of Dr. Wassell's medical opinion that Reed had reached MMI on April 5, 2018. Even viewing the evidence in a light most favorable to the Commission's decision, the decision must be supported by substantial evidence. I do not find that the Commission's findings are supported by substantial evidence because of the Commission's heavy reliance on Dr. Wassell's opinion. Dr. Wassell admitted in his deposition that his opinion was based on commentary in the FCE report that Reed did not put forth a reliable effort. He admitted that he did not read the full report or understand that the unreliable effort was only in regard to the upper-body testing and that the only issue was the functional capacity of his lower body, which the report concluded that Reed did give a reliable effort.

The "finding of fact must contain all of the specific facts relevant to the contested issue . . . so that the reviewing court may determine whether the Commission has resolved these issues in conformity with the law." *Hill v. Baptist Med. Ctr.*, 74 Ark. App. 250, 256, 57 S.W.3d 735, 740 (2001). In *Lunsford v. Rich Mountain Electric Co-op*, 33 Ark. App. 66, 70, 800 S.W.2d 732, 734 (1990), this court found that the denial of workers'-compensation benefits for continuation and reoccurrence of an earlier compensable back injury on the ground that claimant's election to engage in horseback riding was unreasonable and thus not compensable required remand given the Commission's failure to make any finding on the reasonableness of the claimant's horseback riding under those circumstances; after finding that the claimant "believed he had cleared" horseback riding with his physician, the Commission did not find whether horseback riding was unreasonable. Here, the

10

Commission found that Dr. Wassell's opinion that Reed could return to work was based on Reed's unreliable effort. However, as in *Lunsford*, the Commission's finding of fact did not contain all the specific facts. Here, it did not consider that Dr. Wassell had not read the entire FCE report. It also did not consider that Reed's unreliable effort was only put forth on the upper-body part of the test and not the part of the test on his right leg, which was the location of the compensable injury. As a result, Dr. Wassell's opinion could not reasonably be corroborated by the record. Therefore, the conclusion that Reed had reached MMI and was not entitled to TTD benefits after April 5 does not appear reasonable even when examining the evidence in the light most favorable to the Commission.

There are also several instances where Dr. Wassell's testimony appears inconsistent and therefore lacking in substantial evidence to support the Commission's findings. At a follow-up visit with Dr. Wassell on December 14, 2017, Dr. Wassell wrote that Reed had significant quadricep muscle weakness resulting in an antalgic gait and that Reed had not progressed as much as he should have in weaning off the use of his crutches. As a result, Dr. Wassell recommended another month of aggressive physical therapy with an emphasis on regaining his normal gait and strength. Dr. Wassell noted that from a work standpoint, Reed could work any type of sedentary job, if available. However, additional physical therapy was denied by Mortenson's workers'-compensation insurance carrier, and no sedentary work was available. Six weeks after that recommendation, without additional physical therapy to address muscle weakness, antalgic gait, or persistent swelling, Dr. Wassell declared Reed had reached MMI and had an impairment rating of 0 percent. The commission disagreed with

11

his findings to the extent that it assigned an impairment rating of 12 percent. These findings are inherently inconsistent.

The majority has also correctly pointed out that it is the Commission's right, and not the appellate court's, to determine the weight given to testimony. However, in *Morgan v. Desha County Tax Assessor's Office*, 45 Ark. App. 95, 98, 871 S.W.2d 429, 430 (1994), the Commission found that the appellant failed to prove that treatment provided to her was reasonably necessary. In that case, the appellant had seen four doctors. Two of them concluded that additional surgery was needed, and two of them recommended a more conservative treatment. The recommendations of both groups of doctors were based on the same findings. The Commission placed greater weight on the opinions of the second group of doctors and the more conservative treatment. *Morgan* was reversed because, although the second group of doctors recommended conservative treatment, they did not suggest that further treatment was unnecessary. This, combined with the fact that the conservative treatments were not improving the appellant's condition, caused the court of appeals to find that fair-minded persons with the same facts before them could not have concluded that the appellant failed to prove by a preponderance of the evidence that further medical treatment was reasonable and necessary.

Here, the Commission placed greater weight on Dr. Wassell's opinion than that of any of the other medical professionals who testified. This testimony was given weight in spite of the fact that Dr. Wassell contradicted himself several times. He testified that Reed had not progressed as much as he should have in weaning off the use of his crutches and needed

at least another month of aggressive physical therapy with an emphasis on regaining his normal gait and strength. However, that physical therapy was denied by the workers'-compensation insurance carrier. Nevertheless, six weeks later, Dr. Wassell assigned Reed an impairment rating of 0 percent and declared he had reached MMI. In *Morgan*, the Commission chose to give more weight to the findings of one group of doctors over another. Here, however, the Commission chose to give weight to Dr. Wassell's second opinion and completely ignored his first, even though the two are diametrically opposed. Further, despite the weight they lent his second opinion, the Commission deviated from Dr. Wassell's impairment rating, finding instead that Reed had an impairment rating of 12 percent. An impairment rating of 12 percent was not recommended by any medical professional in the record.

For the reasons set forth above, I would reverse and remand.

*Bell & Boyd, PLLC*, by: *Michael W. Boyd*, for appellant.

*Wright, Lindsey & Jennings, LLP*, by: *Joseph H. Purvis*, for appellees.